*Zheng v. Bondi*

BIA
Thompson, IJ
A208 921 397

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of June, two thousand twenty-five.

PRESENT:
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

WANRI ZHENG,
> *Petitioner,*

v.                                                                         22-6178
                                                                           NAC

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:                    Jay Ho Lee, Jay Ho Lee Law Offices LLC,
                                   New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Stephen J. Flynn, Assistant Director; Robert Michael Stalzer, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Wanri Zheng, a native and citizen of China, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Wanri Zheng*, No. A208 921 397 (B.I.A. Mar. 25, 2022), *aff'g* No. A208 921 397 (Immigr. Ct. N.Y.C. Oct. 17, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

"[W]e review the decision of the IJ as supplemented by the BIA," but we only consider the grounds for the IJ's decision that the BIA relied on. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review an adverse credibility determination "under the substantial evidence standard," *Hong Fei Gao v. Sessions*,

891 F.3d 67, 76 (2d Cir. 2018), and the related "administrative findings of fact are [treated as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). When we review an adverse credibility determination, "the 'unless . . . compelled' standard requires that the IJ articulate 'specific' and 'cogent' reasons for finding an applicant not credible, that the reasons provided by the IJ 'be supported by reasonable, substantial and probative evidence in the record when considered as a whole,' and that they 'bear a legitimate nexus to the [adverse credibility] finding.'" *Singh v. Garland*, 6 F.4th 418, 426 (2d Cir. 2021) (quoting *Hong Fei Gao*, 891 F.3d at 76–77).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain

3

that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. For the following reasons, we find that substantial evidence supports the agency's adverse credibility determination.

The agency reasonably found Zheng's claim that he would be targeted by authorities in his home province on account of his participation in an underground church not credible based on three main inconsistencies in his testimony. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). "[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible," and "[m]ultiple inconsistencies would so preclude even more forcefully." *Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020). As an initial matter, Zheng mischaracterizes the agency's decision as relying on only an inconsistency about the name of the person who introduced him to Christianity. In fact, the agency also relied on inconsistencies about how often Zheng attended church and whether the police were looking for him in China. The agency did not err in concluding that the three inconsistencies, taken together, provided substantial evidence for its adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167 ("conclud[ing] that the cumulative effect of th[e] inconsistencies could have led a reasonable fact-finder

4

to find that [the petitioner] was not credible"). As set forth below, the record supports each of the inconsistency findings, and taken together, the inconsistencies call into question Zheng's practice of Christianity and the alleged persecution.

First, Zheng was inconsistent in his responses to questions about whether he knew the name of the person who introduced him to Christianity. Zheng first testified that he did not know the person's name, and he only testified that it was a customer he met while working as a tour guide. He later testified that the person was visiting from Taiwan, that he spoke to him over the course of several days, that his last name was Ling, and that he called him Uncle Ling. When asked why he first said he did not know the person's name, Zheng responded, "Before you were asking for name. I do not know name. I only know the last name." Cert. Admin. R. at 65. The agency was not required to accept that explanation, particularly given that it did not explain why Zheng did not initially identify the man as at least Ling. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)).

5

Second, Zheng was inconsistent about how often he attended church in China. In a declaration attached to his asylum application, he stated that he "attended church once a month or every other month." Cert. Admin. R. at 393. That statement was corroborated by his wife's letter, which represented that Zheng attended church only once every one or two months because of his work schedule. But Zheng testified at his hearing that he attended church twice a month, and even confirmed that he meant he attended every two weeks; he only changed his testimony when confronted with the inconsistency in his written statement. The agency was not required to credit Zheng's explanation, that he "didn't really pay attention before to the question," *id.* at 57, as he testified more than once that he attended church twice a month. *See Majidi*, 430 F.3d at 80.

Third, the agency reasonably relied on Zheng's inconsistent testimony regarding whether the police were looking for him in China. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). When Zheng's attorney asked Zheng at the hearing if the police ever looked for him, Zheng responded, "Do not know," Cert. Admin. R. at 60, which was inconsistent with his written statement that "police came to my house several times to look for me," *id.* at 393. When his attorney rephrased the question, asking, "Did the police ever look for you when you were in China,"

6

Zheng responded, "Yes." *Id.* at 60. But Zheng provided no explanation as to why he initially answered, "Do not know." Once again, the agency was not "*compelled* to credit his testimony" and did not err in finding Zheng incredible. *Majidi*, 430 F.3d at 80 (internal quotation marks omitted).

In addition to these inconsistencies, the agency also reasonably relied on Zheng's lack of reliable corroborating evidence in reaching its credibility determination. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The agency did not err in giving limited weight to Zheng's evidence. Zheng submitted a letter from his wife and a 2016 baptismal certificate from his church in New York. As the agency noted, the letter from Zheng's wife was unsworn and from an interested witness who was not available for cross-examination. *See Likai Gao*, 968 F.3d at 149 ("[T]he IJ acted within her discretion in according [the letters] little weight because the declarants (particularly [the petitioner's] wife) were interested parties and neither was available for cross-examination."); *Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) ("We defer to the agency's determination of the weight

7

afforded to an alien's documentary evidence."). Zheng introduced no evidence from members of his church in China, and he testified that members of his U.S. church refused to testify or provide statements, "[p]erhaps, [because he] did not attend that frequent[ly]," Cert. Admin. R. at 73, although he also claimed that he attended church twice a month in the United States. Accordingly, the agency did not err in finding that he failed to reliably corroborate either his practice of Christianity or the alleged events in China.

The above inconsistencies and lack of corroboration taken together constitute substantial evidence for the agency's adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Likai Gao*, 968 F.3d at 145 n.8; *Xiu Xia Lin*, 534 F.3d at 167; *Biao Yang*, 496 F.3d at 273. The adverse credibility determination is dispositive of Zheng's claims for asylum, withholding of removal, and CAT relief because all three forms of relief are based on the same factual predicate. *See Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under . . . CAT, an adverse credibility determination forecloses all three forms of relief.").

\* \* \*

8

For the reasons set forth above, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9